TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5564
     Facsimile: (213) 894-2927
     E-mail:    david.lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 22-00012-MWF-1 |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT FREDI CASTILLO-VEGA |
| v. | |
| FREDI CASTILLO-VEGA, aka "Listo," aka "Fredy Vega," | |
| Defendant. | |

1.    This constitutes the plea agreement between FREDI CASTILLO-VEGA ("defendant"), also known as ("aka") "Listo, aka "Fredy Vega," and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

DTR 4/15/22

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count one of the indictment in <u>United States v. CASTILLO VEGA, et al.</u>, CR No. 22-00012-MWF-1, which charges defendant with distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant

2

agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSE</u>

4.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, distribution of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), the following must be true: (1) defendant knowingly distributed methamphetamine; and (2) defendant knew that it was methamphetamine or some other federally controlled substance.

5.    Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below, the government must prove beyond a reasonable doubt that defendant distributed at least 50 grams of actual methamphetamine. Defendant admits that defendant, in fact, distributed 196 grams of actual methamphetamine, as alleged in count one of the indictment.

<u>PENALTIES</u>

6.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), is: life imprisonment; a

lifetime period of supervised release; a fine of $10,000,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that, absent a determination by the Court that defendant's case satisfies the criteria set forth in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), is: 10 years' imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $100.

8.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

9.   Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

10.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that

4

it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

11.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

<u>FACTUAL BASIS</u>

12.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree

that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 14 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

On or about July 9, 2020, in Los Angeles County, within the Central District of California, defendant knowingly and intentionally distributed at least 50 grams, that is, approximately 196 grams, of actual methamphetamine, a Schedule II controlled substance. Specifically, on July 9, 2020, defendant arranged to meet a person who, unbeknownst to defendant, was a confidential informant (the "Confidential Informant") working with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") so that defendant could sell five firearms and a half pound of methamphetamine to the Confidential Informant.  Defendant asked the Confidential Informant to come to defendant's house in Los Angeles, California, to complete the deal.  When the Confidential Informant arrived at defendant's house, defendant showed the Confidential Informant the firearms and methamphetamine defendant was offering for sale.  Defendant told the Confidential Informant that he had 3.5 pounds of methamphetamine, including a half pound that defendant had "already weighed" for sale to the Confidential Informant.  He also told the Confidential Informant that defendant only sells "chunks," or large crystals, of methamphetamine instead of powdered methamphetamine.  The Confidential Informant gave defendant $1,500 for the half pound of methamphetamine, which contained 196 grams of actual methamphetamine.

At all relevant times, defendant knew that the substance he distributed was methamphetamine.

In addition, beginning on or before February 26, 2020, and continuing through at least on or about August 19, 2020, in Los Angeles County, within the Central District of California, defendant willfully engaged in the business of dealing in firearms, including the sales of firearms lacking a serial number (commonly referred to as "ghost guns").  At all relevant times, defendant did not have a license as an importer, manufacturer, or dealer in firearms.

Specifically, on February 26, 2020, defendant sold three firearms to the Confidential Informant for $3,500:  a Springfield Armory, model XD-9, 9mm caliber pistol, bearing serial number XD185194; a Chiappa Firearms LTD, model AK-9, 9mm caliber pistol, bearing serial number RONVMB71705871; and an AR-type, unknown caliber rifle, bearing no serial number.

On March 11, 2020, defendant sold four firearms and an auto sear to the Confidential Informant in exchange for $5,000:  a Glock-type, unknown caliber, ghost gun pistol, bearing no serial number; an Accu-Tek, model AT-380, .380 caliber pistol, bearing serial number 044080; an AR-type, 5.56mm caliber ghost gun pistol, bearing no serial number; a Fegyver Es Gepgyar, model AK-47, 7.62mm caliber rifle, bearing serial number EE3087H; and an auto sear, with counterfeit Glock markings, bearing no serial number, which qualifies as a machinegun under 26 U.S.C. § 5845(b).

In July 2020, defendant conducted three firearms transactions directly with the Confidential Informant.  On July 2, 2020, CASTILLO-VEGA sold three firearms to the Confidential Informant for $3,100:  an Intratec, model TEC-9, 9mm caliber pistol, bearing serial number

A061010; a Phoenix Arms, model HP22A, 22LR caliber pistol, bearing serial number 4351400; and a Mossberg, model 590, 12-gauge shotgun, bearing serial number L550894.  On July 9, 2020, CASTILLO-VEGA sold three Glock-type, unknown caliber, ghost gun pistols, bearing no serial numbers, and an auto sear, with counterfeit Glock markings, bearing no serial number, to the Confidential Informant in exchange for $4,500.  On July 15, 2020, CASTILLO-VEGA sold two AR-type, 5.56 NATO caliber short-barreled rifles, bearing no serial numbers, and a Mossberg, model 590, 12-gauge shotgun, bearing serial number P196877, to the Confidential Informant in exchange for $3,700.

In addition, on or about March 11, 2020, in Los Angeles County, within the Central District of California, defendant knowingly possessed a machinegun conversion device (also known as a "Glock switch," "trigger switch," or "auto switch").  Defendant knew that this device was designed and intended solely and exclusively for use in converting a weapon into a machinegun.  On or about July 9, 2020, defendant knowingly possessed another machinegun conversion device, which defendant similarly knew to be a machinegun.

In addition, on or about July 15, 2020, defendant knowingly possessed the following firearms, each of which defendant knew to be a short-barreled rifle, and each of which had not been registered to defendant in the National Firearms Registration and Transfer Record:

- An AR-type, 5.56 NATO caliber rifle, bearing no serial number (commonly referred to as a "ghost gun"), with a barrel less than 16 inches in length, namely, approximately 8 5/8 inches in length; and

1    • An AR-type, 5.56 NATO caliber ghost gun rifle, bearing no
2       serial number, with a barrel less than 16 inches in length,
3       namely, approximately 8 5/8 inches in length.

4    Additionally, on or about July 15, 2020, defendant knowingly
5    possessed the following firearms, each of which defendant knew to be
6    a short-barreled rifle, and each of which was not identified by a
7    serial number:

8    • An AR-type, 5.56 NATO caliber rifle, bearing no serial
9       number (commonly referred to as a "ghost gun"), with a
10      barrel less than 16 inches in length, namely, approximately
11      8 5/8 inches in length; and

12   • An AR-type, 5.56 NATO caliber ghost gun rifle, bearing no
13      serial number, with a barrel less than 16 inches in length,
14      namely, approximately 8 5/8 inches in length,

15                          SENTENCING FACTORS

16   13.  Defendant understands that in determining defendant's
17   sentence the Court is required to calculate the applicable Sentencing
18   Guidelines range and to consider that range, possible departures
19   under the Sentencing Guidelines, and the other sentencing factors set
20   forth in 18 U.S.C. § 3553(a).  Defendant understands that the
21   Sentencing Guidelines are advisory only, that defendant cannot have
22   any expectation of receiving a sentence within the calculated
23   Sentencing Guidelines range, and that after considering the
24   Sentencing Guidelines and the other § 3553(a) factors, the Court will
25   be free to exercise its discretion to impose any sentence it finds
26   appropriate between the mandatory minimum and up to the maximum set
27   by statute for the crime of conviction.

28

                                    9

14.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Base Offense Level:           32   U.S.S.G. §§ 2D1.1(a)(5), (c)(4) Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

15.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

16.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

17.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

18.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

19.   Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 29 and the criminal history category calculated by the

11

Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

21.  The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense

level of 29 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

22. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

23. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

### EFFECTIVE DATE OF AGREEMENT

24. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

1

<u>BREACH OF AGREEMENT</u>

2      25.   Defendant agrees that if defendant, at any time after the
3 signature of this agreement and execution of all required
4 certifications by defendant, defendant's counsel, and an Assistant
5 United States Attorney, knowingly violates or fails to perform any of
6 defendant's obligations under this agreement ("a breach"), the USAO
7 may declare this agreement breached.  All of defendant's obligations
8 are material, a single breach of this agreement is sufficient for the
9 USAO to declare a breach, and defendant shall not be deemed to have
10 cured a breach without the express agreement of the USAO in writing.
11 If the USAO declares this agreement breached, and the Court finds
12 such a breach to have occurred, then: (a) if defendant has previously
13 entered a guilty plea pursuant to this agreement, defendant will not
14 be able to withdraw the guilty plea, and (b) the USAO will be
15 relieved of all its obligations under this agreement.

16      26.   Following the Court's finding of a knowing breach of this
17 agreement by defendant, should the USAO choose to pursue any charge
18 that was either dismissed or not filed as a result of this agreement,
19 then:

20           a.   Defendant agrees that any applicable statute of
21 limitations is tolled between the date of defendant's signing of this
22 agreement and the filing commencing any such action.

23           b.   Defendant waives and gives up all defenses based on
24 the statute of limitations, any claim of pre-indictment delay, or any
25 speedy trial claim with respect to any such action, except to the
26 extent that such defenses existed as of the date of defendant's
27 signing this agreement.

28

1          c.   Defendant agrees that: (i) any statements made by

2  defendant, under oath, at the guilty plea hearing (if such a hearing

3  occurred prior to the breach); (ii) the agreed to factual basis

4  statement in this agreement; and (iii) any evidence derived from such

5  statements, shall be admissible against defendant in any such action

6  against defendant, and defendant waives and gives up any claim under

7  the United States Constitution, any statute, Rule 410 of the Federal

8  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

9  Procedure, or any other federal rule, that the statements or any

10  evidence derived from the statements should be suppressed or are

11  inadmissible.

12        COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

13                        OFFICE NOT PARTIES

14      27.  Defendant understands that the Court and the United States

15  Probation and Pretrial Services Office are not parties to this

16  agreement and need not accept any of the USAO's sentencing

17  recommendations or the parties' agreements to facts or sentencing

18  factors.

19      28.  Defendant understands that both defendant and the USAO are

20  free to: (a) supplement the facts by supplying relevant information

21  to the United States Probation and Pretrial Services Office and the

22  Court, (b) correct any and all factual misstatements relating to the

23  Court's Sentencing Guidelines calculations and determination of

24  sentence, and (c) argue on appeal and collateral review that the

25  Court's Sentencing Guidelines calculations and the sentence it

26  chooses to impose are not error, although each party agrees to

27  maintain its view that the calculations in paragraph 14 are

28  consistent with the facts of this case.  While this paragraph permits

both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

31. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

_____          May 6, 2022
DAVID C. LACHMAN                  Date
Assistant United States Attorney


_____          5/6/22
FREDI CASTILLO-VEGA              Date
Defendant


_____          5/6/22
JENAE MCDONALD                   Date
Attorney for Defendant
FREDI CASTILLO-VEGA

17

1                    CERTIFICATION OF DEFENDANT

2       I have read this agreement in its entirety. I have had enough

3  time to review and consider this agreement, and I have carefully and

4  thoroughly discussed every part of it with my attorney.  I understand

5  the terms of this agreement, and I voluntarily agree to those terms.

6  I have discussed the evidence with my attorney, and my attorney has

7  advised me of my rights, of possible pretrial motions that might be

8  filed, of possible defenses that might be asserted either prior to or

9  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charge and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19

20  FREDI CASTILLO-VEGA                     Date
    Defendant

21

22

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am FREDI CASTILLO-VEGA's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          5-6-22
JENAE MCDONALD                             _____
Attorney for Defendant                     Date
FREDI CASTILLO-VEGA